**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL NO. 19-525** |
| **v.** | * | |
| | * | |
| **ROSLYN WEDINGTON,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*\*\*\*\*\*

<u>**MEMORANDUM IN AID OF SENTENCING**</u>

The United States of America, by its undersigned counsel, hereby submits this Memorandum in Aid of Sentencing.

**I.      INTRODUCTION**

On November 13, 2019, the Defendant, Roslyn Wedington, entered guilty pleas to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 and five (5) counts of filing a false tax return in violation of 26 U.S.C. § 7206.

In the Defendant's plea agreement, the parties stipulated that the Defendant's adjusted offense level is 15.  ECF No. 6 ¶6.  According to the Presentence Report, the Defendant's criminal history category is III.  Accordingly, the Defendant's advisory sentencing guideline range is 24 to 30 months of incarceration.

The United States recommends a sentence of 24 months.

**II.      APPLICATION OF THE FACTORS ENUMERATED IN 18 U.S.C. § 3553(a)**

Title 18, Section 3553(a) provides:

(a)  Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed—

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

* * *

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.

As to the factors enumerated in 18 U.S.C. § 3553(a)(1) and (2), the lengthy factual statement in the Defendant's plea agreement established that the Defendant abused her position as the Executive Director of a not-for-profit organization, the Maryland Center for Adult Training (MCAT), in order to avoid paying taxes and having her wages garnished and did so over a number of years.  Below are the facts contained in the Defendant's plea agreement:

The Defendant Roslyn Wedington was a full time salaried employee of the Maryland Center for Adult Training, Inc., (hereafter MCAT) from 2009 through 2019.  At no time during that period was she an independent contractor.

MCAT was located at 4910 Park Heights Avenue, Baltimore, Maryland. MCAT was a non-profit 501(c)(3) entity that provides training and employment certifications for jobs in the healthcare field, including certifications to be a nursing assistant or a geriatric nursing assistant.  MCAT represents itself to be a private career school accredited by the Maryland Higher Education Commission and the Maryland Board of Nursing.  MCAT was an approved "Eligible Training Provider" (hereafter "ETP") and its name appeared on the Maryland Department of Labor, Licensing and Regulation's (DLLR) Eligible Training Provider list.

- 2 -

As a recognized ETP, MCAT was eligible to receive, and did receive, federal funds, including U.S. Department of Labor Workforce Innovation and Opportunity Act (WIOA) funds awarded through DLLR and the U.S. Department of Health and Human Services Temporary Assistance for Needy Family (TANF) grant funds awarded by the State of Maryland's Department of Human Services. MCAT has also received funding from private philanthropic organizations, such as the Abell Foundation and Associated Black Charities.

Wedington was initially hired to serve as MCAT's student coordinator in 2009. In 2012, Wedington became the organization's executive director.

During Wedington's tenure at MCAT, G.B. uploaded information, supplied by Wedington, to MCAT's payroll service provider's electronic platform. In 2015, G.B., who became the chairperson of MCAT's Board that year, obtained signatory authority on MCAT's bank account.

As executive director, Wedington handled the day-to-day operations of MCAT, including, for example, what grants to pursue and what activities to undertake. She also handled the organization's day-to-day accounting.

In 2011 and 2012, MCAT withheld funds from her bi-weekly pay check for the purposes of paying state and federal taxes and making contributions to the Social Security and Medicare programs. At the end of both of those years Wedington received an Internal Revenue Service (IRS) Form W2, which detailed the withholdings that MCAT had made.

In 2013, Wedington's salary was garnished in order to repay outstanding student loan debt and medical bills. In order to avoid further garnishments, Wedington asked G.B. to take her "off payroll," which he agreed to do. Thereafter, G.B. did not submit payroll information concerning Wedington to MCAT's payroll provider, which would trigger an electronic funds transfer to Wedington's bank account and the withholding of state and federal taxes and contributions to the Social Security and Medicare programs. Instead, G.B. directed MCAT's payroll provider to pay him, G.B., as an independent contractor. G.B., in turn, provided the money to Wedington in cash. After September 2015, G.B. obtained signatory authority over MCAT's bank account and began issuing checks to Wedington, which she, in turn, cashed. Thus, Wedington avoided having her MCAT salary go through her bank account, where it could be garnished, and also avoided having any funds withheld for tax purposes.

Starting in 2013, G.B. also began preparing Wedington's taxes on IRS Form 1040s, something he did each successive year through tax year 2017, in exchange for a small fee.

Wedington knowingly filed false tax returns in 2013, 2014, 2015, 2016 and 2017 all of which had been prepared by G.B., and all of which contained a written declaration that they were made under penalties of perjury.

### a.  2013

Wedington filed a Form 1040 for tax year 2013, on April 20, 2014.  In it she falsely claimed to be unemployed.  Her only reported income for that year was $15,803 in unemployment insurance and $1,565 in state and local income tax refunds.  She did not report any income, of any kind, from MCAT.

However, Wedington did, in fact, receive a salary of $80,600 from MCAT for working 40 hours per week as the organization's executive director in 2013.  This salary was paid to her by G.B. in cash.  G.B. received the funds he paid Wedington from MCAT.

In 2013, MCAT did not issue a Form W-2 for Wedington for her compensation of $80,600 as it had done in 2011 and 2012.  MCAT did not withhold any funds from Wedington's salary in 2013.

As a result of various false entries on her Form 1040 for 2013, Wedington received a refund in the amount of $6,091 to which she was not entitled.

### b.  2014

Wedington filed a Form 1040 for tax year 2014 on February 10, 2015.  Wedington did not report any income from MCAT during that year.

However, Wedington did, in fact, receive a salary of $80,600 from MCAT for working 40 hours per week as the organization's executive director.  This salary was paid to her by G.B. in cash.  G.B. received the funds he paid Wedington from MCAT.

In 2014, MCAT did not issue a Form W-2 for Wedington for her compensation of $80,600.  MCAT did not withhold any funds from Wedington's salary in 2014.

The only income Wedington reported on her 1040 for 2014 was $50,000 in gross receipts to RRW Consulting LLC, a company she organized that she described as being in the business of "Management Consulting" on a Schedule C.  This entry was false because RRW Consulting did no work in 2014.  Wedington also claimed $32,283 in false business expenses for RRW Consulting, which reduced her taxable income.  As a result of various false entries on her Form 1040 for 2014, Wedington received a refund in the amount of $4,957 to which she was not entitled.

c.  **2015**

Wedington filed a Form 1040 for tax year 2015 on February 8, 2016.  Like 2014, Wedington did not report any income from MCAT.

However, Wedington did, in fact, receive a salary of $80,600 from MCAT for working 40 hours per week as the organization's executive director.  This salary was paid to her by G.B. in cash until September 2015.  G.B. received the funds he paid Wedington from MCAT.

Beginning in September 2015, G.B. obtained signatory authority over MCAT's bank account.  After that date, he began issuing MCAT checks to Wedington.  Wedington cashed those checks, rather than deposit them into a bank account.  G.B. also directed MCAT's payroll provider to direct deposit payments purportedly due to him, G.B., into an account in the name of Wedington's adult son, Raishawn Hebron, totaling $23,410, in 2015.  Wedington paid various personal expenses from this account.  Wedington opened an M&T Bank account in her son's name in September of 2013, after she closed her last known bank account in August 2013.

MCAT did not issue a Form W-2 for Wedington for her compensation of $80,600.  MCAT did not withhold any funds from Wedington's salary in 2015.

The only income Wedington reported in 2015 was $27,000 in gross receipts to RRW Consulting LLC on a Schedule C to her Form 1040.  This entry was false because RRW Consulting did no work in 2015.  Wedington also claimed $16,872 in false business expenses for RRW Consulting, which reduced her taxable income. As a result of various false entries on her Form 1040 for 2015, Wedington received a refund in the amount of $3,774 to which she was not entitled.

In June of 2015, the Maryland Department of Labor, Licensing and regulation (DLLR) performed a routine fiscal audit of MCAT because MCAT had received a grant from DLLR.  As part of the audit procedures, DLLR reviewed various MCAT documents for the period of January 1, 2014 through May 31, 2015. In performing the audit, DLLR asked MCAT to provide documentation to support MCAT's expenditures of funds for that audit period. Specifically, DLLR requested documentation to support the expenditure of $185,330 to pay for 74 hours of work purportedly performed by G.B. as a "contractor" hired by MCAT. The amount paid to G.B. equated to a rate of $2,500 per hour. In addition, there was an additional $19,850 paid to G.B. during the audit period that also lacked supporting documentation.   The amounts MCAT had paid G.B. during the audit period included Wedington's salary. Wedington and Brown did not disclose that fact.

**d. 2016**

Wedington filed a Form 1040 for tax year 2016 on February 23, 2017. Like in 2013, 2014 and 2015, Wedington did not report any income from MCAT.

Wedington did, in fact, receive a salary of $84,200 from MCAT for working 40 hours per week as the organization's executive director. Wedington's salary was paid, via checks signed by G.B. and drawn on MCAT's account. Wedington cashed these checks.

The only income Wedington reported in 2016 was $27,000 in gross receipts to RRW Consulting LLC, on a Schedule C to her Form 1040. This entry was false because RRW Consulting did no work in 2016. Wedington also claimed $16,471 in false business expenses for RRW Consulting, which reduced her taxable income. As a result of various false entries on her Form 1040, Wedington improperly received a refund in the amount of $3,425 to which she was not entitled.

In 2016, Wedington filed a workers compensation claim against MCAT for an injury suffered while at work. As part of the claims process, The Hartford, the insurance carrier for MCAT, required that a "Statement of Wage Information" be submitted by MCAT. In the Statement of Wage Information prepared by Wedington and G.B. and submitted to The Hartford by MCAT, Wedington and G.B. represented Wedington's weekly gross salary as $1,600, reduced to $1,181 purporting to show the deduction of employment taxes. As a result of the workers compensation claim, Wedington received a settlement in the amount of $8,942.

**e. 2017**

Wedington filed a Form 1040 for tax year 2017 on February 7, 2018. Wedington reported no wages or income of any kind.

Wedington did, in fact, receive a salary of $83,200 from MCAT for working 40 hours per week as the organization's executive director in 2017. Wedington's salary was paid, via checks signed by G.B. and drawn on MCAT's account. Wedington cashed these checks.

Unlike 2014, 2015 and 2016, Wedington reported no gross receipts on her Form 1040, Schedule C, for RRW Consulting LLC. Wedington did, however, claim expenses of $12,529 for RRW Consulting, generating a loss of $12,529. RRW Consulting did not incur these expenses in 2016. As a result of various false entries on her Form 1040 for 2017, Wedington received a refund in the amount of $2,757 to which she was not entitled.

On or about March 6, 2017, Wedington entered into a sales contract for a 2014 5-Series BMW. Wedington also entered into a loan agreement with PenFed Credit Union to finance the purchase of the car. To qualify to purchase the car,

> Wedington provided as proof of income two MCAT wage statements dated February 10, 2017, and February 24, 2017.  Wedington prepared these false wage statements.   Wedington represented that she earned an annual salary of $89,600 as the Executive Director of MCAT.  Wedington further represented that she received her salary on a bi-weekly basis in the amount of $2,362. The wage statements also reflect that Wedington had federal taxes withheld from her wages which she knew was false.

ECF 6-1 (factual statement to plea agreement).

The Defendant is also the rare fraud recidivist having been previously pled guilty in Baltimore City Circuit Court in 2004 of stealing $852,000 from her employer, Dr. Ernest Colvin, who died in 2015.  According to state court records, "She accomplished this by writing checks to herself or her creditors and putting a different name and amount on the check register. She would give the checks to Dr. Colvin to sign with a smaller amount and then add a thousand to it."  Also according to state court records, because "[the Defendant] reconciled the checking account, she was able to cover the theft."  She was ordered to pay $200,000 in restitution and received a seven-year suspended sentence and five years of supervised probation. She violated her probation by failing to pay the $200,000 in restitution.  The Defendant's earlier experience with the criminal justice system failed to deter her from engaging in fraud.

Perhaps this case will.

In terms of avoiding unwarranted sentencing disparities pursuant to 18 U.S.C. § 3553(a)(6), the only co-defendant who is relevant is Gary Brown, the Chair of the MCAT Board who enabled Wedington to commit her crimes.  This Court sentenced Brown to 27 months incarceration for his role in the offenses committed by former Baltimore Mayor Catherine Pugh and Wedington.  The Defendant could not complain that a sentence of 24 months amounts to an unwarranted sentencing disparity between her and Brown.  Indeed, it was the Defendant and not Brown, who benefited from the scheme at MCAT.

### III.    RESTITUTION

In her plea agreement, the Defendant committed to the following:

<u>Tax Liability</u>

12.    The Defendant understands that this Agreement does not resolve any civil tax liability that the Defendant may have, and that this Agreement is with the United States Attorney's Office, not with the Internal Revenue Service.  The Internal Revenue Service is not a party to this Agreement and remains free to pursue any and all lawful remedies it may have.  The Defendant agrees, however, as a special condition of supervised release: (a) to execute a final and conclusive "Closing Agreement" with the Internal Revenue Service, pursuant to section 7121 of the Internal Revenue Code, in order to resolve tax liabilities for the years 2013 through 2017; (b) to provide a complete and accurate financial statement, under penalty of perjury, to the United States that shall identify all assets valued at $1,000 or more owned or held directly or indirectly by the Defendant, as well as all such assets transferred by the Defendant to any third parties since 2013, including the location of said assets and identities of the third parties; and (c) to pay to the Internal Revenue Service all additional taxes, interest and penalties that the Internal Revenue Service may determine that the Defendant owes for the tax years 2013 through 2017, pursuant to the aforesaid Closing Agreement.  The Defendant understands that a failure to comply with any of the conditions of the Defendant's supervised release may result in revocation of the Defendant's release conditions, resulting in the Defendant's reincarceration for all or part of the term of supervised release.

ECF 6 ¶ 12 (plea agreement).

Further, the Defendant agreed she owed the following taxes to the Internal Revenue Service as a result of her criminal conduct:

| YEAR | SALARY | TOTAL TAX |
|------|--------|-----------|
| 2013 | $80,600.00 | $24,011.93 |
| 2014 | $80,600.00 | $23,889.08 |
| 2015 | $80,600.00 | $23,780.53 |
| 2016 | $84,200.00 | $25,177.53 |
| 2017 | $83,200.00 | $24,733.43 |
| | **TOTAL** | **$121,592.50** |

ECF 6-1 (factual stipulation to plea agreement).  The Defendant should be ordered to pay her outstanding tax liability to the Internal Revenue Service at the following address:

IRS-RACS
Attn: Mail Stop 6261, Restitution
333 Pershing Ave.
Kansas City, MO 64108

## IV.    CONCLUSION

For the foregoing reasons, a sentence of 24 months incarceration is sufficient but not greater than necessary to achieve the goals of sentencing as articulated in 18 U.S.C. § 3553(a).

Respectfully submitted,

Robert K. Hur
United States Attorney

By: _____

Leo J. Wise
Martin J. Clarke
Assistant United States Attorneys
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 725-6725

CERTIFICATE OF SERVICE

This is to certify that, a copy of the foregoing was electronically filed via ECF and made available to counsel of record.

_____

Leo J. Wise
Assistant United States Attorney